**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRIAN W.,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **NO.    25-cv-2471** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security,** | : | |
| **Defendant.** | : | |

<u>**MEMORANDUM OPINION**</u>

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **November 12, 2025**

Brian W. (Plaintiff) brought this action seeking review of the Commissioner of Social Security Administration's (SSA) decision denying his claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f (the Act). This matter is before me for disposition upon consent of the parties. For the reasons set forth below, Plaintiff's Request for Review (ECF No. 8) is **DENIED**.

# I.    PROCEDURAL HISTORY

Plaintiff protectively filed the instant application for disability benefits on June 20, 2022, alleging disability beginning December 8, 2011, due to social anxiety disorder, spine problems, depression, post-traumatic stress disorder (PTSD), anxiety, drug addiction, obesity, and attention deficit hyperactivity disorder (ADHD). (R. 17, 273). Plaintiff's application was denied at the initial level on January 19, 2023, and upon reconsideration on July 5, 2023. (R. 17). Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 174). On November 15, 2023, Plaintiff amended the alleged onset date to September 22, 2018. (R. 261). Plaintiff,

represented by counsel, as well as a vocational expert, testified at the December 28, 2023, administrative hearing.  (R. 42-75).  On May 28, 2024, the ALJ issued a decision unfavorable to Plaintiff.  (R. 14-39).  Plaintiff appealed the ALJ's decision, and the Appeals Council denied Plaintiff's request for review on March 17, 2025, thus making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  (R. 1-6).

On May 14, 2025, Plaintiff filed a complaint in this Court and consented to my jurisdiction pursuant to 28 U.S.C. § 636(c) the next day.  (Compl., ECF No. 1; Consent, ECF No. 4).  On August 19, 2025, Plaintiff filed a Brief and Statement of Issues in Support of Request for Review.  (Pl.'s Br., ECF No. 10).  The Commissioner filed a Response on September 9, 2025. (Resp., ECF No. 11).  Plaintiff filed a Reply on September 23, 2025.  (Reply, ECF No. 12).

## II.    FACTUAL BACKGROUND[1]

The Court has considered the administrative record in its entirety and summarizes here the evidence relevant to the instant request for review.

Plaintiff was born on May 17, 1975, and was 36 years old on the alleged disability onset date.  (R. 110).  He graduated high school and attended one year of trade school.  (R. 51).  His past relevant work includes work as an animal caretaker and a carpenter.  (R. 107).

### A.    Medical Evidence

Plaintiff has struggled with mental health issues since at least 2013.  (R. 718).  He treated with mental health counselor Darryl DeVose of Serenity Safe-Haven Outpatient Clinic in Philadelphia, Pennsylvania (Serenity) for his mental health issues.  (R. 633).  On November 11,

---

[1]  Because Plaintiff's request for review implicates only his mental impairments, the Court summarizes the evidence relating to any physical impairments only as necessary to adequately address the issues presented in this appeal.

2021, DeVose diagnosed Plaintiff with ADHD-combined type, bipolar disorder with depressed mood, and opioid dependence. (*Id.*). He also noted that Plaintiff had an adjustment disorder that "require[d] intervention." (*Id.*). Plaintiff's mental health symptoms included: anxiety or nervousness; shifting focus or worry; hypervigilance; depressed mood "[t]o the point of social deterioration"; and ruminations about past failings. (*Id.*). DeVose and Plaintiff agreed that Plaintiff's short- and long-term goals would be to work to develop healthy cognitive patterns and beliefs about himself and about the world to alleviate his labile mood. (*Id.*). At this session, DeVose assessed Plaintiff as engaged and attentive, given plaintiff maintained appropriate eye contact and reported feeling "good." (R. 636). He also noted that Plaintiff was "motivated for treatment." (R. 634). Over the next several months, DeVose continued to work with Plaintiff to develop coping mechanisms for his depression, labile mood, and social anxiety. (R. 633-707, 1432-36, 1440-48, 1451-56, 1459-70, 1473-84, 1487-93, 1496-1501, 1504-06, 1509-14, 1517-22, 1526-31, 1534-36, 1539-44, 1547-52). Plaintiff remained attentive and engaged during these sessions, frequently reporting that he was doing "good" and that his treatment was going well. (*Id.*).

During this same period, Plaintiff treated with Gregory Salmon, a licensed nurse practitioner who also worked for Serentiy. Salmon noted many of the same findings as DeVose, including that Plaintiff's mood was frequently euthymic with no signs of depression, anxiety, psychotic thought process, or other thought disorders. (R. 1437-39, 1449-50, 1457-58, 1471-72, 1485-86, 1494-95, 1502-03, 1507-08, 1515-16, 1524-25, 1532-33, 1537-38, 1545-46, 1553-54).

Plaintiff treated with several medical providers at Temple Health in Philadelphia, Pennsylvania. At those appointments, Plaintiff frequently presented as generally alert and cooperative with normal neurologic appearance, mood, and judgment. (R. 1132, 1148, 1164,

3

1170, 1186-87, 1193, 1310, 1316-17, 1366, 1397, 1411, 1419).

On January 8, 2024, Salmon completed a medical source statement evaluating Plaintiff's mental impairments.  (R. 1555-60).  He noted that Plaintiff's medication regimen had kept him "stable at and above baseline psychiatrically," and that his progress was "good."  (R. 1556). Salmon opined that Plaintiff would be precluded from performing 11-20 percent of an eight-hour workday based on his impaired abilities to: understand, remember, and carry out detailed instructions; maintain attention for two-hour segments; work in coordination with or proximity to others without being unduly distracted; and complete a normal workday and workweek without interruptions from psychologically based symptoms.  (R. 1558).  He also opined that Plaintiff would be precluded from performing less than ten percent of an eight-hour workday based on his impaired abilities to: remember work-like procedures; carry out very short and simple instructions; maintain regular attendance and be punctual within customary, usually strict tolerances; perform at a consistent pace without an unreasonable number and length of rest periods; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and deal with normal work stress.  (R. 1558-59).  In the space provided beneath these checkboxes to explain his findings, Salmon noted that Plaintiff's limitations stemmed from his anxiety issues and his ADHD diagnosis.  (R. 1559).  Based on his findings, Salmon opined that Plaintiff would be "off task" during a typical workday 20 percent of the time and would miss about two days per month.  (R. 1559-60).

On April 27, 2020, State agency psychological consultant John D. Chiampi opined that Plaintiff was markedly limited in his ability to carry out detailed instructions; was moderately limited in his ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted or distracting others,

complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact with others, accept instructions and respond appropriately to others, and set realistic goals or make plans independently of others; and no more than mild limitations in all other areas of mental function.  (R. 106-07).  He further opined that Plaintiff would be able to perform basic, routine tasks with appropriate behavior.  (*Id.*)

On December 27, 2022, State agency psychological consultant Beau Brendley performed a mental status examination of Plaintiff, noting that he was cooperative and had a fair manner of relating, appropriate dress and eye contact, normal behavior, and satisfactory personal hygiene; coherent and goal-directed thought processes with no evidence of hallucinations, delusions, or paranoia; neutral mood, a clear sensorium, and was oriented to person, place, and time; intact attention and concentration; mildly impaired memory; average cognitive functioning; good insight and judgment; and good family relationships.  (R. 713-14).  In the accompanying medical source statement, Brendley opined that Plaintiff: had moderate limitations in his ability to understand, remember, or carry out complex instructions and make judgments on complex work-related decisions; and no more than mild limitations regarding other areas of mental function. (R. 715-16).

On January 5, 2023, State agency psychological consultant Gina Marie Brelsford performed a mental status examination of Plaintiff.  (R. 110-22).  After surveying the relevant medical notes, she observed that his symptoms included: depressed mood; hopelessness; social withdrawal; decreased concentration and forgetfulness; and sleep difficulties with some insight and judgment concerns.  (R. 120).  She found that Plaintiff's mental impairments resulted in moderate limitations in his ability to: understand, remember, or carry out detailed instructions;

interact with others, including working in coordination with or in proximity to others without being distracted by them; concentrate, persist, or maintain pace; adapt or manage oneself; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the work setting. (R. 115, 119-20). Brelsford added that although Plaintiff participates in psychotherapy, he did not participate in any inpatient programs to treat his mental health issues. (R. 120). Brelsford ultimately concluded that he had the capacity to perform "one- or two-step, routine tasks in a stable environment" and "can function in production-oriented jobs requiring little independent decision-making." (*Id.*).

On June 29, 2023, State agency psychological consultant Arlene I. Rattan largely agreed with the findings of Brelsford on reconsideration. (R. 132-34).

### B.     Nonmedical Evidence

The record also contains nonmedical evidence. Plaintiff testified at the December 28, 2023, administrative hearing as to his work history, the severity of his medical issues, and how those medical issues affected his functional capacity. (R. 44-67). Plaintiff testified that he last worked as an animal caretaker in 2011. (R. 48-49). He left that job because he was having a "hard time" keeping up with the pace of the job, and it was "[t]oo much mentally" for him. (R. 52). According to Plaintiff, he was suffering from drug addiction due to a former back surgery. (*Id.*). He attempted to work another job afterwards at Bryn Mawr Veterinary Hospital but was fired shortly after starting based on his failure to come in on time, not coming in at all for some shifts, and frequently asking to leave work early. (R. 52-53).

Regarding his mental health issues, Plaintiff testified that he has received treatment for those issues for the past five years. (R. 62). He stated that he sees his doctor once per month and his therapist once every two weeks for his mental health issues. (*Id.*). He takes psychiatric

medication as prescribed.  (*Id.*).  Though he has treated these issues for the past five years and was "sure" it had helped his depressive symptoms, Plaintiff testified that he still did not "feel like [he] did in the past."  (R. 63).  Plaintiff had "good days and bad days," struggled to be happy and to stay focused, and had little to no desire to "do anything" anymore.  (R. 63-64).

Plaintiff specifically noted that he struggled with social anxiety and that when he was around more than one person, he was uncomfortable and lost the ability to think.  (R. 66).  Notwithstanding these symptoms, Plaintiff testified that he did not have trouble getting along with others, even when he was in an anxious mood.  (R. 64).

Arthur Brown, a VE, also testified at the hearing.  He testified that an individual who would be off task for 15% of the workday or who missed two or more days of work per month would be precluded from work.  (R. 71-72).

Plaintiff completed an adult function report on August 18, 2022.  (R. 280-87).  He noted that he lived with his mother; spent most days inside speaking with her, watching television, and talking to or texting his friends; was responsible for taking care of his pets; drives; was able to shop for groceries and other essentials; attended concerts and professional sporting events two to three times per year; went out to dinner one to two times per month; became easily distracted; did not follow written or oral instructions well; got along well with authority figures; and did not handle stress well.  (R. 281-86).  He further noted that his impairments affected his ability to: talk; remember or recollect things; complete tasks; concentrate; understand; follow instructions; and get along with others.  (R. 285).

Plaintiff's mother, Nancy W., also completed an adult function report on August 19, 2022, endorsing similar functionality as described by Plaintiff in his report.  (R. 288-96).

## III.    ALJ DECISION

Following the administrative hearing, the ALJ issued a decision in which he made the following findings:

1.    The claimant has not engaged in substantial gainful activity since June 20, 2022, the application date (20 CFR 416.971 *et seq.*).

2.    The claimant has the following severe impairments: major depressive disorder; anxiety; attention deficit hyperactivity disorder (ADHD); left hand, old ununited fracture of the distal phalangeal tuft of the first finger; carpal tunnel syndrome (CTS); lumbar degenerative disc disease with herniated nucleus polyposis and radiculopathy, status post lumbar laminectomy; obesity; and chronic methadone use (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except: never climb ladders, ropes, or scaffolds; never kneel and crawl; occasionally climb ramps and stairs, balance, stoop, and crouch; frequent reaching, handling, fingering, and feeling; occasionally push and pull; no use of foot controls on right, occasional on left; able to understand, remember, and carry out simple instructions and decisions with occasional workplace changes; occasional interaction with co-workers, supervisors, and the public; must avoid concentrated exposure to vibrations, extreme heat, humidity and wetness, and

dusts/odors/fumes/and pulmonary irritants; no more than a moderate noise level, defined as a typical business office setting; occasional operation of a motor vehicle; and no work with extreme cold and hazards like dangerous moving machinery and unprotected heights.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 17, 1975 and was 47 years old, which is defined as a younger individual age 45-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since June 20, 2022, the date the application was filed (20 CFR 416.920(g)).

(R. 19-33). Accordingly, the ALJ found Plaintiff was not disabled. (R. 33).


## IV. LEGAL STANDARD

To be eligible for benefits under the Social Security Act, a claimant must demonstrate to the Commissioner that he cannot engage in substantial gainful activity because of a medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential analysis is used to evaluate a disability claim:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, then the Commissioner considers in the second step whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to perform basic work activities. If the claimant suffers a severe impairment, the third inquiry is whether, based on the medical evidence, the impairment meets the criteria of the impairment listed in the "listing of impairments," . . . which result in a presumption of disability, or whether the claimant retains the capacity to work. If the impairment does not meet the criteria for a listed impairment, then the Commissioner assesses in the fourth step whether, despite the severe impairment, the claimant has the residual functional capacity to perform his past work. If the claimant cannot perform his past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

*Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000); *see also* 20 C.F.R. § 416.920(a)(4). The disability claimant bears the burden of establishing steps one through four. If the claimant is determined to be unable to resume previous employment, the burden shifts to the Commissioner at step five to establish that, given the claimant's age, education, work experience, and mental and physical limitations, he is able to perform substantial gainful activities in jobs existing in the national economy. *Poulos v. Comm'r. of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007).

Judicial review of a final decision of the Commissioner is limited. A district court is bound by the factual findings of the Commissioner if they are supported by substantial evidence and decided according to correct legal standards. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 118 (3d Cir. 2000) (citations omitted). Even if the record could support a contrary conclusion, the

decision of the ALJ will not be overruled as long as there is substantial evidence to support it. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986). The court has plenary review of legal issues. *Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).

## V.    DISCUSSION

In his request for review, Plaintiff raises a single issue: the ALJ erred in finding Salmon's medical opinion unpersuasive.[2] (Pl.'s Br., ECF No. 10, at 3).

### A.    The Parties' Arguments

Plaintiff argues that the ALJ did not adequately address the supportability and consistency of Salmon's opinion, as required by the regulations. (*Id.* at 3). According to Plaintiff, "[t]hese errors left the decision as a whole not supported by substantial evidence." (*Id.*).

In his decision, the ALJ determined that Salmon's finding that Plaintiff was "stable" and "at and above baseline" was internally inconsistent with Salmon's ultimate findings regarding the extent of Plaintiff's mental limitations. (R. 30). The ALJ therefore determined that the opinion was not well-supported. (*Id.*). He also concluded that the opinion was not consistent with the rest of the record evidence, noting both that Plaintiff's mental status examinations were mostly unremarkable and that the record indicated his course of treatment was effective in managing his symptoms. (*Id.*). Plaintiff takes issue with the ALJ's supportability analysis, arguing that "stability is not the same thing as being functional." (Pl.'s Br., ECF No. 10, at 3).

---

[2] Though Plaintiff styles his claim as a challenge to the ALJ's treatment of Salmon's opinion only, he further suggests at times that substantial evidence does not support the ALJ's RFC determination generally. (*See, e.g.,* Pl.'s Br., ECF No. 10, at 1, 3, 5, 7). The Court also considers these contentions below.

He cites *Nazario v. Commissioner of Social Security*, for the proposition that "stability does not equate to a specific medical condition. Indeed, someone can be stable with a chronic disabling malady or stable on a particular day or in a certain environment." (*Id.* at 6 (citing 794 F. App'x 204, 211 (3d Cir. 2019))). Ultimately, Plaintiff contends that "while [he] was stable, it was simply [] Salmon noting his condition had not changed, and to the extent he was 'above baseline,' [] Salmon was indicating he was above his baseline." (*Id.*). Regarding the consistency of the opinion with other record evidence, Plaintiff contends that to the extent the ALJ found that Plaintiff had "generally unremarkable presentations during treatment," that finding itself was based only upon a cursory analysis unsubstantiated by any meaningful discussion. (*Id.* (citing R. 30)).

In contrast to the ALJ's purported lack of meaningful analysis, Plaintiff points to other record evidence that he believes supported or was consistent with Salmon's opinion, including: Plaintiff's prescriptions for divalproex, bupropion, and paroxetine (medications which treat major mental health issues), treatment notes from Salmon indicating Plaintiff needed to "replace negative with positive ideation" and incorporate stress-relieving methods, and treatment notes from other medical sources indicating Plaintiff had adjustment disorder; needed to attend therapy sessions to deal with his irrational beliefs; was working to decrease unhelpful, destructive, and unhealthy thoughts; experienced anxiety and hypervigilance including panic and anxiety attacks; was working to improve his impulse control, mood lability management, coping skills, and insight and understanding of his behavioral issues; and was at times unmotivated and disinterested and endorsed not eating or sleeping enough and neglecting proper hygiene. (*Id.* at 6-7 (citing R. 1435, 1438, 1440, 1443, 1446, 1454, 1459, 1471, 1476, 1487, 1494, 1502, 1515, 1545, 1553)). Plaintiff argues that "[o]verall" the ALJ failed to evaluate the supportability and

consistency of this evidence. (*Id.* at 7).

The Commissioner responds that the ALJ adequately considered the record evidence, including Salmon's opinion. (Resp., ECF No. 11, at 5). He observes that Salmon "ultimately found that the allegations of difficulty following instructions, memory problems, challenges handling stress, problems getting along with authority figures, and distractibility were not fully consistent with the evidence of record." (*Id.* (citing R. 23-31)). The Commissioner highlights the following record evidence in support of the ALJ's RFC determination: generally unremarkable mental status examinations in which Plaintiff reported he was doing "good" or "okay" and usually denied significant symptoms related to depression or anxiety; Plaintiff's reports that his medication was working well; examination reports documenting cooperative attitude, full orientation and mood/affect, and normal thought content, memory, and/or judgment; Plaintiff's ADLs, which included caring for himself, preparing meals, doing laundry, cleaning, shopping, managing his own finances, driving, reading, watching television, and maintaining good relationships with his mother and sister; Chiampi's opinion that Plaintiff would be able to perform basic, routine tasks with appropriate behavior; the opinions of Brelsford and Rattan that Plaintiff would be able to perform one- or two-step, routine tasks in a stable environment; Brendley's opinion that Plaintiff had no more than mild limitations in understanding and carrying out simple instructions, interacting with others, and responding appropriately to usual work situations and to changes in a routine work setting; the fact that Salmon's opinion was a check-box form without meaningful explanation accompanying it; and the fact that Salmon himself noted that Plaintiff was "responding well to treatment," had euthymic mood, logical thinking, and intact insight and judgment, and denied symptoms of poor concentration, worthlessness, distractibility, anxiety, irritability, fatigue, or panic attacks. (*Id.* at

6-9 (citing R. 26-28, 30, 105-07, 119-20, 132-34, 479, 500, 552, 558, 571, 582, 598, 639, 642, 645, 648, 651, 672, 675, 684, 690, 696, 705, 713-16, 724, 1148, 1170, 1242, 1356, 1366, 1419, 1440, 1451, 1454, 1476, 1479, 1494, 1499, 1502, 1507, 1509, 1515, 1517, 1520, 1524, 1526, 1532, 1534, 1537, 1539, 1545, 1547, 1553, 1556-60, 1588)).  According to the Commissioner, this illustrates both that the ALJ adequately considered Salmon's opinion in relation to the record evidence and that the ALJ's assessment of that opinion is supported by substantial evidence.  (*Id.* at 9-11).[3]

B.    **Analysis**

The ALJ is responsible for fashioning a claimant's RFC, including his mental RFC.  A claimant's RFC is what he can still do despite his established impairments.  20 C.F.R. § 416.945(a)(1).  In making an RFC determination, the ALJ must consider all evidence before him. *See Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999).  That evidence includes medical records, observations made during formal medical examinations, descriptions of limitations by the claimant and others, and observations of the claimant's limitations by others.  *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001); 20 C.F.R. § 416.945(a).  An ALJ must consider the medical opinions together with the rest of the relevant evidence, and explain the weight given to those opinions in his decision.  *Chandler*, 667 F.3d at 362.  While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."  *Id.* at 361.  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the

---

[3]  Plaintiff's Reply reaffirms the arguments contained in his Request for Review and provides no additional substantive argument.  (*See generally* Reply, ECF No. 12).

wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting *Cotter v. Harris*, 642 F.2d 700, 707 (3d Cir. 1981)).  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.  *See, e.g.*, *Byrd v. Comm'r of Soc. Sec.*, No. 23-4957, 2024 WL 4631645, at *9 (E.D. Pa. Oct. 30, 2024); *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

The social security regulations "require, an ALJ to offer 'a narrative discussion describing how the evidence supports'" the limitations imposed.  *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019) (citing SSR 96-8P, at *7).  An "ALJ 'may not reject [a physician's findings] unless he first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected.'"  *Mason*, 994 F.2d at 1067 (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)); *see also Carter v. Railroad Retirement Bd.*, 834 F.2d 62, 65 (3d Cir.1986).

When evaluating medical evidence, the most important factors are supportability and consistency, and the ALJ must explain how he or she considered these factors for a medical source's medical opinions or prior administrative medical findings in the determination or decision.  20 C.F.R. § 416.920c(a)-(c).  The remaining factors include the medical source's relationship with the claimant, the medical source's specialization, and other factors that tend to support or contradict the medical opinion.  *Id.* at § 416.920c(c).  An ALJ, in his discretion, need only reference these other factors if he finds that two medical opinions about the same issue are equally persuasive, well-supported, and consistent with the record evidence.  *Id.* at § 416.920c(b)(3).

Although the ALJ is not required "to use particular language or adhere to a particular

format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett*, 220 F.3d at 119).  The ALJ must provide "not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected."  *Cotter*, 642 F.2d at 705; *see also Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence.").  "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."  *Id.*

Based on the above principles, the ALJ did not err in his evaluation of the medical evidence, including Salmon's opinion.  He surveyed the relevant medical opinions (Salmon's, but also those of Brendley, Rattan, Brelsford, and Chiampi), Plaintiff's treatment notes, and his own statements regarding his mental impairments, and ultimately determined that although the record evidence illustrated that Plaintiff had limiting mental impairments, the totality of the evidence still supported the conclusion that he could perform sedentary work, had the ability to understand, remember, and carry out simple instructions, and could handle occasional workplace changes and interactions with others.  (R. 23).

Salmon opined that Plaintiff was limited in his understanding, concentration, and memory and that these limitations would result in him being off task for 20 percent of the workday and absent about two days per month.  (R. 1558).  The ALJ found this opinion unpersuasive, noting that it was internally inconsistent, inconsistent with the rest of the record evidence, and not supported by adequate rationale.  (R. 30).  In coming to this conclusion, the ALJ highlighted that: Salmon himself noted Plaintiff was "stable" and "at and above baseline

with treatment with no side effects"; Plaintiff had generally unremarkable mental status examinations throughout the duration of his treatment, including by Salmon himself; and the rest of the record evidence supported the mental RFC findings the ALJ assessed.  (*Id.*).  The other record evidence included the opinions of Brendley, Brelsford, and Rattan who opined that Plaintiff only had mild or "slightly limited" mental function and that Plaintiff had the mental capacity to handle one- or two-step, routine tasks in a stable environment, (R. 29, 110-22, 132-34, 713-16), as well as Plaintiff's own testimony that he did not have trouble getting along with others, even when he was in an anxious mood, (R. 31, 64).  The ALJ found each of these opinions persuasive, and credited Plaintiff's testimony in this regard.  (*Id.*; *see also* SSR 96-6p, 1996 WL 374180, at * (July 2, 1996) ("Because State agency medical and psychological consultants . . . are experts in the Social Security disability programs, . . . [20 C.F.R. § 416.927(f)] require[s ALJs] . . . to consider their findings of fact about the nature and severity of an individual's impairment(s)."); *Chandler*, 667 F.3d at 361 ("State agent opinions merit significant consideration" by the ALJ); *Brockway v. Barnhart*, 94 F. App'x 25, 28-29 (2d Cir. 2004) (noting that an ALJ may credit the testimony of a claimant that "demonstrated an ability to do light work")).

Ultimately, the ALJ concluded that the record illustrated that any symptoms related to Plaintiff's mental impairments could be managed by regular outpatient psychotherapy visits and use of psychotropic medication.  (R. 31).  He stated that "[t]his evidence with the absence of ER visits or hospitalizations suggests less intense and persistent symptoms managed with treatment. This is generally consistent with [Plaintiff's] frequent reports of doing well and medication working well.  Repeated exams at most showed only mild impairment of memory once."  (*Id.* (citing R. 633-721, 1432-1554); *see also Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672,

676-77 (11th Cir. 2020) ("A conservative treatment plan tends to negate a claim of disability. . . . [C]onservative treatment can support discrediting subjective symptoms . . . .") (citation omitted); *Burnett*, 220 F.3d at 118 (substantial evidence is "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate"); *Simmonds*, 807 F.2d at 58 (even if the record could support a contrary conclusion, the decision of the ALJ will not be overruled as long as there is substantial evidence to support it)).

The above record evidence supports the ALJ's determinations regarding the RFC generally and Salmon's opinion specifically, inasmuch as they indicate Plaintiff's mental function limitations were at most moderate and could be well-managed via treatment. *See Burnett*, 220 F.3d at 118; *see also Simmonds*, 807 F.2d at 58. Therefore, Plaintiff's chief contentions fail.[4]

Nonetheless, Plaintiff takes issue with the ALJ's assertion that he was "stable" and "at and above baseline," arguing that it was "cursory" and that just because he was stable does not necessarily mean that he was functional. (Pl.'s Br., ECF No. 10, at 5-6). While this general assertion may be correct, *see Nazario*, 794 F. App'x at 211, it is clear from the surrounding context of the ALJ's analysis that he ultimately found Plaintiff's mental impairments resulted in at most "moderate" functional limitations, (R. 22), that any symptoms stemming from his mental

---

[4]  The Commissioner also relies upon Chiampi's opinion and the fact that Salmon's was a checkbox form as additional support for the ALJ's determination. (*See* Resp., ECF No. 11, at 8-9). However, the ALJ: 1) expressly rejected the opinion of Chiampi; and 2) did not mention that Salmon's opinion was a checkbox form as a part of his rational for rejecting it. (*See generally* R. 19-33). Accordingly, the Court does not consider these additional arguments. *See Fongsue v. Saul*, No. 20-574, 2020 WL 5849430, at *8 (E.D. Pa. 2020) ("[T]his court is constrained to review only the ALJ's reasoning, not the post hoc arguments propounded by Defendant after the ALJ's decision") (citing *Fargnoli*, 247 F.3d at 44 n.7 (quoting *Sec. & Exch. Comm'n v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based."))); *Teada v. Comm'r of Soc. Sec.*, No. 19-4537, 2020 WL 1953660, at *2-3 (E.D. Pa. 2020) (citations omitted).

disorders were manageable through treatment, (R. 30-31), and that other record evidence showed Plaintiff had the capacity to handle the demands of a workplace, (*See* R. 23-31 (wherein the ALJ relied upon the medical opinions of Brendley, Brelsford, and Rattan who opined that Plaintiff could handle the demands of the workplace including occasional interaction with others, Plaintiff's ADLs which indicated a level of functionality not consistent with total disability, and Plaintiff's own testimony that even when he experiences social anxiety he can still interact with others)). *See Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 315 (E.D. Pa. 2022) ("[A]n ALJs decision is to be 'read as a whole . . . .'") (quoting *Jones*, 364 F.3d at 505). In other words, he was "stable" and "at and above baseline," which for Plaintiff meant (by his own acknowledgment) "doing well" while receiving treatment. (R. 30). This evidence, coupled with the fact that the ALJ additionally credited other medical opinions in the record finding that Plaintiff's mental impairments resulted in at most moderate mental function limitations and that Plaintiff had the capacity to perform sedentary work and occasionally handle interactions with others, provides substantial support for the ALJ's decision to reject Salmon's opinion, as well as for the ALJ's RFC determination. Therefore, in this case it is clear from the opinion which factors the ALJ relied upon in rejecting Salmon's opinion. *See Gross v. Comm'r of Soc. Sec.*, 653 F. App'x 116, 120 (3d Cir. 2016) (the Act requires only that the agency's path "may reasonably be discerned") (quoting *Christ the King Manor, Inc. v. Sec'y of Health & Hum. Servs.*, 730 F.3d 291, 305 (3d Cir. 2013)).

Finally, to the extent that Plaintiff highlights certain record evidence and argues the ALJ failed to consider it in his evaluation of Salmon's opinion, that contention amounts to a mere disagreement with the ALJ regarding how much weight to assign the varying pieces of evidence in the record. *See Perkins v. Barnhart*, 79 F. App'x 512, 514-15 (3d Cir. 2003) ("[The

claimant's] argument here amounts to no more than a disagreement with the ALJ's decision, which is soundly supported by substantial evidence."); *Markoch v. Comm'r of Soc. Sec.*, No. 1:20-CV-00417, 2020 WL 7586953, at *4-5 (D.N.J. Dec. 22, 2020) ("It is Plaintiff's burden to establish the severity of her impairments, and Plaintiff's challenge to the ALJ's consideration of her non-severe impairments amounts to mere disagreement with his analysis rather than showing any substantive error."); *see also Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006) ("Surveying the medical evidence to craft an RFC is part of the ALJ's duties."); *see also Hur v. Barnhart*, 94 F. App'x. 130, 133 (3d Cir. 2004) ("There is no requirement that the ALJ discuss in [her] opinion every tidbit of evidence included in the record.").

In sum, for the reasons discussed above, the ALJ did not err in his evaluation of Salmon's opinion or formulation of the RFC.

## VI.    CONCLUSION

For the reasons set forth above, Plaintiff's request for review is **DENIED**.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge